UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURISA A. WASIEWICZ,

                              Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                13-CV-1026S
CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


      1.     Plaintiff Laurisa A. Wasiewicz challenges an Administrative Law Judge's ("ALJ") decision, dated May 23, 2012, wherein the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act.  She now contends that this determination is not based upon substantial evidence, and reversal is warranted.

      2.     Plaintiff protectively filed an application for supplemental security income on May 25, 2010, alleging disability beginning February 1, 2008.  The application was initially denied on July 13, 2010, and Plaintiff was granted a hearing on that denial. She testified before the ALJ on October 14, 2011.  The ALJ issued a decision denying Plaintiff's application on May 23, 2012.  The Appeals Council denied Plaintiff's request for review on August 9, 2013, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on October 7, 2013.

      3.     Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   The Commissioner filed a cross motion. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5.      To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. § § 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5;  Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g);  Heckler v. Campbell, 461 U.S. 458, 460-61, 103

S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since May 25, 2010, the application date (R. 22);[1]   (2)   Plaintiff's obstructive sleep apnea, fibromyalgia, and major depressive disorder were severe impairments (R. 22); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 22-23);  (4) Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work in that she should have no more than occasional contact with the public, coworkers, or supervisors (R. 24-27); and (5) although she could not perform any of her past relevant work, considering her age, education, experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.  (R. 28.)

10.      Plaintiff first argues that the ALJ erred by failing to properly evaluate and weigh the opinion of treating psychiatrist Andrew Reichert, M.D.  Specifically, she claims that the ALJ should have given controlling weight to Dr. Reichert's October 11, 2011 medical source statement assessing various moderate mental limitations.  (Pl's Mem of Law at 12-14, citing R. 303-307.)

11.      A treating physician's opinion is generally given more weight than that of other reports, and in fact will be given controlling weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999);  see 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ discounted Dr. Reichert's October 11, 2011 opinion because it was

---

[1]

Citations to the underlying administrative record are designated as "R."

inconsistent with his own treatment notes and because it was inconsistent with the other evidence in the record. (R. 26, 254-260, 275-281, 296-301).

Specifically, Dr. Reichert completed a standard-form Mental Residual Functional Capacity Questionnaire ("MRFCQ") on October 11, 2011 and opined that Plaintiff had poor to no ability to perform even basic functions, to perform at a consistent pace, and to understand, remember and carry out detailed instructions. (R. 26, 303-308). However, as the ALJ pointed out, Dr. Reichert's October 11, 2011 opinion was inconsistent with his treatment notes which consistently showed that Plaintiff was doing well overall, that she did well with her medication, and that her condition progressively improved. (R. 26, 254-260, 275-281.) Dr. Reichert's October 11, 2011 opinion was also inconsistent with the fact that, throughout his treatment of Plaintiff, he assessed her with Global Assessment Functioning ("GAF") scores ranging from 56 to 65.[2]  (R. 26, 256, 280, 301.)

The ALJ also discounted Dr. Reichert's opinion because it was inconsistent with the other evidence in the record.  Specifically, Susan Santarpia, Ph.D. performed a consultative psychological examination of Plaintiff in June 2010 and assessed that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and that she was only mildly impaired in the following areas: performing complex tasks independently, making appropriate decision, relating adequately with others, and dealing with stress. (R. 26, 174-178). Similarly, State Agency psychologist H. Tzetzo

---

[2]

A GAF is a scale from 0 to 100 that may be used to report a clinician's judgment of an individual's overall symptom severity and the level of his or her functioning.  A GAF score of 51-60 indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A GAF score of 61-70 demonstrates some mild symptoms or some difficulty in occupational, social, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

completed a standard-form Psychiatric Review Technique ("PRT") form in July 2010 and assessed that Plaintiff was able to understand and follow work instructions in a work setting (with low public contact), maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decisions in a work setting (with low public contact).  (R. 26, 202).

The opinions of Santarpia and Tzetzo were consistent with Plaintiff's testimony that she experienced only mild obsessive compulsive tendencies such as collecting books and straightening things -- i.e., behaviors that did not significantly interfere with her life functions.  With respect to her ability to concentrate, Plaintiff testified that she has taken Wellbutrin since 1999, and that this medication allows her "to think a little better."  (R. 26, 52.)  Further, as the ALJ noted, Plaintiff reported that she is able to go outside alone, she has a driver's license and drives, and that she is able to go outside to watch her daughter play.  (R. 26, 48, 52-56, 148-155.)

Plaintiff argues, in the alternative, that even if the ALJ properly afforded Dr. Reichert's October 20, 2011 opinion less than controlling weight, the ALJ still erred by failing to consider all of the factors set forth by 20 C.F.R. § 416.927 and Social Security Ruling ("SSR") 96-2p when determining the weight to afford a medical opinion.  (Pl's Mem of Law at 13-14; Pl's Reply at 3-4).  This argument is meritless.  When an ALJ declines to afford the opinion of a claimant's treating physician less than controlling weight, the ALJ must consider -- but need not explicitly discuss -- the six factors set forth by 20 C.F.R. § 416.927(c), which include, among other things, the consistency of the opinion with the record as a whole.  Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004).  So

long as the ALJ provides comprehensive reasoning for discrediting the treating physician's opinion, and the ALJ's reasoning is supported by substantial evidence, remand is unwarranted.  Atwater, 512 F. App'x at 70;  Petrie v. Astrue, 412 F. App'x 401, 406-07 (2d Cir. 2011);  Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009).

Here, while the ALJ did not walk through each of the factors  set forth at 20 C.F.R. § 416.927(c), he did comprehensively set forth his reasons for discounting Dr. Reichert's opinion.  (R. 26.)  As discussed above, the ALJ discounted Dr. Reichert's October 11, 2011 opinion because it was inconsistent with his own treatment notes and with other substantial evidence.  Given these inconsistencies, the ALJ reasonably afforded less than controlling weight to the October 11, 2011 opinion of treating physician Dr. Reichert.

12.	Next, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence.  Specifically, she asserts that the ALJ failed to incorporate all of the mental limitations assessed by State Agency consultant Tzetzo into his RFC finding, despite affording Tzetzo's opinion great weight.   (Pl's Mem of Law at 14-15, citing 186-187).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).

Here, after considering the entire record, the ALJ determined that Plaintiff had the RFC "to perform less than the full range of light work . . . in that she should have no more than occasional contact with the public, coworkers, or supervisors."  (R. 24.)  Plaintiff asserts that although the ALJ afforded "great[]" weight to Tzetzo's opinion when formulating Plaintiff's RFC, he failed to specifically account for Tzetzo's July 2010 PRT opinion that Plaintiff was "moderately limited" in her "ability to maintain attention and concentration and

complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Pl's Mem of Law at 14-15, citing 186-187; Pl's Reply at 4-5).  The Court finds this argument unavailing because while Tzetzo checked off the "moderately limited" box in the one particular aforementioned area on his standard-form PRT (R. 187), he ultimately assessed that "[Plaintiff] should be able to understand and follow work directions in a work setting (with low public contact), maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decisions in a work setting (with low public contact)[.]"  (R. 202.)  Tzetzo's overall conclusion, therefore, was consistent with the other evidence in the record related to Plaintiff's mental impairments (as discussed above).  To this extent, the ALJ properly credited Tzetzo's July 2010 PRT opinion and relied upon it when formulating his RFC.

Moreover, while the ALJ did not explicitly discuss the particular aforementioned limitation assessed by Tzetzo, he did incorporate moderate limitations into his RFC by expressly restricting Plaintiff to light work that required "no more than occasional contact with the public, coworkers, or supervisors."  (R. 24.)  See Retana v. Astrue, 2012 WL 1079229, *6 (D. Colo. 2012) (ALJ was not required to discuss thoroughly each moderate limitation;  "ALJ's RFC adopted some of [doctor's] moderate limitations such as restricting plaintiff to unskilled work not involving complex tasks, reflecting plaintiff's moderate limitations in his ability to carry out detailed instructions and to maintain concentration for extended periods").  In doing so, the ALJ thoroughly discussed Plaintiff's psychiatric treatment history, her limited mental health counseling, her statements concerning her daily activities, as well as the medical opinion of consultative psychological examiner Dr. Santarpia regarding Plaintiff's functional mental limitations.  (R. 25-27)  Thus, the Court

finds that the ALJ did not err in assessing Plaintiff's RFC, and that his decision is supported by substantial evidence.

13.     Plaintiff also argues that the ALJ's credibility determination is not supported by substantial evidence.  Specifically, she claims that the ALJ should have fully credited her subjective claims of debilitating pain, fatigue, and problems with her mental focus/concentration because they are supported by the objective medical evidence.  (Pl's Mem of Law at 15-16).

Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses).

As an initial matter, Plaintiff has failed to demonstrate how her subjective claims are supported by the objective medical evidence.  Moreover, in determining that Plaintiff was not entirely credible, the ALJ explicitly discussed why the objective medical evidence did not support Plaintiff's subjective complaints with respect to each of her impairments. (R.24-27.)  For instance, the ALJ noted Plaintiff's allegations that her fibromyalgia limited her ability to sit, stand, walk, and lift.  (R. 24, 50.)  He also noted Plaintiff's complaints to rheumatologist Mark Schulte, M.D. of generalized pain and a heavy feeling in her legs.  (R. 24, 169-173, 211-218).   However, the ALJ pointed out the evidence from Dr. Schulte showed that Plaintiff walked for exercise, her daily activities were unlimited, and that she responded well to the pain medication Neurontin.  (R. 24, 242.)  The ALJ also discussed Plaintiff's complaints of fatigue related to her sleep apnea, but noted that the evidence from Sandra Block, M.D. showed that CPAP therapy was successful in helping Plaintiff sleep and that Plaintiff reported feeling better, being more awake, and thinking more clearly.  (R.

25, 272-274.)  Additionally, the ALJ discussed Plaintiff's complaints of poor focus and concentration due to her mental health problems, but pointed out that Dr. Reichert's treatment notes showed that Plaintiff functioned well overall and that, in September 2011, Plaintiff was doing well with her medication, had improved mood, could read without distraction, and had marked improvement.  (R. 26, 301.)  Finally, the ALJ sufficiently discussed why Plaintiff's activities of daily living were inconsistent with her claims of disabling pain and related symptoms.  The ALJ noted that while Plaintiff complained of experiencing debilitating panic symptoms, changes in mood, and periods of isolation and low energy, her psychiatric treatment notes showed that she functioned well overall, her condition was stable with medication, and that her GAF scores were consistently in the range of only mild to moderate symptoms.  (R. 27, 254-260, 296-301.)  The ALJ also pointed out that Plaintiff admitted that she is able to go outside and play with her daughter, drive, travel outside of her home alone, and shop both online and in stores.  (R. 26, 148-155).

Accordingly, the Court finds that the ALJ's credibility determination is free from error and is supported by substantial evidence.

14.     Finally, Plaintiff argues that the ALJ erred as a matter of law in failing to elicit the testimony of a vocational expert at step five of his analysis.  (Pl's Mem. of Law at 16).

At the fifth step of the sequential analysis, the ALJ must determine whether, based on the claimant's age, education, work experience, and RFC, the claimant could "make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(v).  As part of this analysis, the ALJ must determine whether there are jobs that the claimant could perform that exist in sufficient numbers in the national ecomony.  SSR 83-10, 1983 WL 31251, at *4 (1983).  When the claimant has only exertional impairments, the ALJ may meet this burden by

applying the Medical-Vocational Guidelines, also known as the Grids.  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986);  see also SSR 83-11, 1983 WL 31252, at *1 (1983) (use of Grids to direct conclusion of "disabled" or "not disabled" allowed only when criteria of a rule in the Grids are "exactly met").  When a claimant experiences nonexertional limitations, the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone.  Bapp, 802 F.2d at 604.  The Second Circuit has explained that the ALJ may not solely rely on the Grids if a nonexertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work."  Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (quoting Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010)).  A nonexertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  Zabala, 595 F.3d at 411 (internal quotations marks omitted).

Whether expert testimony is required must be determined on a "case-by-case basis."  Bapp, 802 F.2d at 605-06.  "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]."  Id. at 603.  In short, the ALJ may apply the Grids -- without calling a vocational expert -- if they "adequately reflect a claimant's condition."  Id. at 605.

Here, as discussed above, the ALJ reasonably determined that Plaintiff retained the RFC to perform less than the full range of light work in that she could have no more than occasional contact with the public, coworkers, or supervisors.  (R. 23-27.)  The ALJ also concluded that the additional non-exertional limitations "have little or no effect on the occupational base of unskilled light work."  (R. 28.)  As a result, he was not required to seek testimony from a vocational expert.  See Bapp, 802 F.2d at 605 (expert testimony required only if nonexertional limitations "significantly limit the range of work permitted by

[claimant's] exertional limitations").

Accordingly, the Court finds no error with respect to the ALJ's analysis at step five.

15.    For the foregoing reasons, and upon a review of the record as a whole, the Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, Defendant's Cross Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   October 28, 2014
         Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                         Chief Judge
                                 United States District Court